[Cite as *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 2012-Ohio-1324.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CARNEGIE COMPANIES, INC.

    Appellee

    v.

SUMMIT PROPERTIES, INC., et al.

    Appellants

C.A. No.      25622

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008 02 1852

DECISION AND JOURNAL ENTRY

Dated: March 28, 2012

CARR, Presiding Judge.

{¶1}    Appellant, Summit Properties ("Summit"), appeals the judgment of the Summit County Court of Common Pleas, which ordered it to pay the attorney fees for appellee, Carnegie Companies, Inc. ("Carnegie"), in its prosecution of its motion to disqualify counsel. This Court affirms.

I.

{¶2}    Carnegie and Summit sued one another over issues arising out of a land deal. Before the trial court had the opportunity to address any substantive issues underlying the complaint and counterclaim, Carnegie filed a motion to disqualify opposing counsel in which it further requested an award of attorney fees. After an evidentiary hearing, the trial court granted the motion to disqualify and determined that Carnegie was entitled to an award of attorney fees based on bad faith demonstrated by the law firm of Ulmer & Berne, L.L.P. Summit appealed. This Court affirmed the trial court's order disqualifying Ulmer & Berne. *Carnegie Cos., Inc. v.*

*Summit Properties, Inc.*, 183 Ohio App.3d 770, 2009-Ohio-4655 (9th Dist.). We dismissed the appeal in part for lack of a final, appealable order, however, inasmuch as it challenged the award of attorney fees in the absence of a specific monetary award. *Id.*

{¶3} While the appeal was pending, Carnegie moved this Court for an award of appellate attorney fees and costs pursuant to App.R. 23 based on its allegation that Summit's appeal was frivolous. By journal entry, this Court recognized the motion as a belated attempt by Carnegie to supplement its appellate brief with an argument raising an alternate theory. *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 9th Dist. No. 24553 (Sep. 9, 2009). We wrote that, although Summit did not prevail on its appeal from the trial court's order granting Ulmer & Berne's disqualification, it nevertheless presented a reasonable question for review. Accordingly, because we concluded that Summit's appeal was not frivolous, we denied Carnegie's motion for an award of appellate attorney fees.

{¶4} Subsequently, Carnegie moved the trial court for a hearing on the amount of the award of attorney fees to which the trial court determined it was entitled based on Ulmer & Berne's bad faith. Summit opposed the motion, arguing that the issue of attorney fees was moot pursuant to the law of the case doctrine. Carnegie filed a reply in support of its motion and Summit filed a sur-reply.

{¶5} On February 25, 2010, the parties filed a joint stipulation of partial dismissal, dismissing the underlying substantive claims, preserving only the issue of the award of attorney fees for further trial court consideration. On August 30, 2010, the parties filed a joint stipulation as to the reasonableness of the amount of attorney fees and expenses expended by Carnegie to prosecute its motion for disqualification. The stipulation expressly reserved unto Summit the right to appeal the trial court's finding of sanctionable misconduct in its November 26, 2008

order and Carnegie's right to recover attorney fees and expenses in connection with its motion for disqualification.

{¶6} On September 3, 2010, Carnegie moved the trial court for entry of judgment in its favor, asserting that it was entitled to an award of attorney fees and expenses pursuant to the November 26, 2008 order in the amount to which the parties had stipulated. Summit quickly filed a memorandum in opposition, asserting that the parties' stipulation as to the reasonableness of the amount of attorney fees and expenses expended by Carnegie did not constitute a concession by Summit that Carnegie was legally entitled to such an award. On September 21, 2010, the trial court issued an order granting judgment in favor of Carnegie against Summit and Ulmer & Berne, jointly and severally, in the stipulated amount of $79,856.26. Summit has appealed, raising three assignments of error for review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF SUMMIT AND ULMER BY FINDING "BAD FAITH" ON THE PART OF ULMER IN FAILING TO VOLUNTARILY WITHDRAW FROM THE REPRESENTATION OF SUMMIT IN CASE NO. CV 2008 02 1852 SINCE NO CLAIM OF "BAD FAITH" WAS MADE BY CARNEGIE PRIOR TO THE COURT'S DETERMINATION.

{¶7} Summit argues that the trial court erred by awarding attorney fees to Carnegie on the basis of Ulmer & Berne's bad faith because Carnegie did not make a claim of bad faith and Summit, therefore, did not have notice of the need to defend against such a claim. This Court declines to address the substantive merits of this argument because Summit failed to raise the issue below.

**{¶8}** This Court has stated:

> When reviewing arguments on appeal, this Court cannot consider issues that are raised for the first time on appeal. The Ohio Supreme Court has stated that other than issues of subject matter jurisdiction, "reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." *Goldberg v. Indus. Comm.*, 131 Ohio St. 399, 404 (1936). It is well established that "an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams*, 51 Ohio St.2d 112, 117 (1997).

*Harris v. Akron*, 9th Dist. No. 24499, 2009-Ohio-3865, ¶ 9.

**{¶9}** Here, once this Court disposed of Summit's first appeal, the trial court regained jurisdiction over the case. We clearly stated that the issue of the propriety of an award of attorney fees and expense for legal work performed on behalf of Carnegie in the prosecution of its motion for disqualification before the trial court was not final. *Carnegie*, 2009-Ohio-4655, at ¶ 19 and 65. Accordingly, the November 26, 2008 order finding bad faith by Ulmer & Berne and granting an award of attorney fees was merely interlocutory and the trial court was free to reconsider or modify it. *Simkanin v. Simkanin*, 9th Dist. No. 22719, 2006-Ohio-762, ¶ 7 (recognizing that Civ.R. 54(B) allows a trial court to reconsider interlocutory orders); *see also Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379 (1981), fn. 1.

**{¶10}** Although Summit continued to oppose the entry of an award of attorney fees for Carnegie after the resolution of the first appeal, it did so only on the basis of arguments that such an award was barred by the law of the case doctrine and that the evidence did not support a finding of bad faith. Summit never opposed the entry of such an award for the reason that it had no notice of the need to defend against a claim of bad faith. By failing to raise any argument before the trial court that Carnegie had failed to allege bad faith so that Summit had no notice of its need to defend against such a claim, Summit forfeited its right to raise this argument for the

first time on appeal. *Harris* at ¶ 10, citing *State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 10. Accordingly, Summit's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE PREJUDICE OF SUMMIT AND ULMER BY FAILING TO FOLLOW THE LAW OF THE CASE.

{¶11} Summit argues that the trial court erred by awarding attorney fees and expenses to Carnegie based on the law of the case doctrine. This Court disagrees.

{¶12} "The law of the case doctrine 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. No. 23648, 2008-Ohio-37, ¶ 10, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Ultimately, "the doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal. New arguments are subject to issue preclusion, and are barred." *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404-405 (1996).

{¶13} Summit argues that this Court's order denying Carnegie's request for appellate attorney fees is dispositive of the issue of whether Carnegie is entitled to attorney fees for work performed in the trial court in the prosecution of its motion for disqualification. Summit attempts to bolster its argument by asserting that the issue of Carnegie's entitlement to attorney fees was fully resolved in appellate case number 24553 because this Court declined to find that Summit's first appeal was frivolous.

{¶14} The parties expended great time and effort to address an issue that is quite simple. This Court declined to address the substantive merits of the issue of Carnegie's entitlement to an

award of attorney fees for work performed in the trial court after concluding that we lacked jurisdiction to address that issue. *Carnegie*, 2009-Ohio-4655, at ¶ 19 and 65. Our journal entry in which we denied Carnegie's request for appellate attorney fees did only that; it did not address the issue of trial level attorney fees. Moreover, our finding that Summit's first appeal was not frivolous was based solely on a consideration of the issue which was properly before us, specifically, whether the trial court erred by ordering the disqualification of Ulmer & Berne. Because we did not consider and resolve, and in fact were jurisdictionally precluded from considering and resolving, the issue of the propriety of an award of attorney fees and expenses to Carnegie for work performed in the trial court in its prosecution of its motion for disqualification, the trial court's imposition of a monetary award of such fees and expenses was not barred by the law of the case doctrine. Summit's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> THE DECISION THAT ULMER ACTED WITH DISHONEST PURPOSE, MORAL OBLIQUITY, CONSCIOUS WRONGDOING OR FRAUDULENT MOTIVE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE TRIAL COURT THUS ERRED TO THE PREJUDICE OF SUMMIT AND ULMER.

{¶15} Summit argues that the trial court's finding that Ulmer & Berne acted in bad faith is against the manifest weight of the evidence. This Court disagrees.

{¶16} In determining whether the trial court's decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The Ohio Supreme Court has clarified that:

> [W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial judge had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶17} A finding of bad faith must be predicated upon a finding that Ulmer & Berne acted in a manner evidencing more than mere bad judgment or negligence; rather, the attorneys must have acted with a dishonest purpose, moral obliquity, conscious wrongdoing, an actual intent to mislead or deceive, or in breach of a known duty premised on an ulterior motive or ill will in the nature of fraud. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983). *Accord State v. Whalen*, 9th Dist. No. 08CA009317, 2008-Ohio-6739, ¶ 9.

{¶18} This Court has thoroughly set out the factual and procedural background in our prior decision. *Carnegie*, 2009-Ohio-4655, ¶ 2-15. For context, we briefly restate the relevant background.

{¶19} Carnegie had used the legal services of Ulmer & Berne in regard to environmental matters arising out of properties in which it had an interest since 1994. In June 2007, Carnegie contacted Ulmer & Berne regarding an environmental concern arising out of its interest in acquiring a property referred to as the Frontier Shopping Center. Bob Karl of Ulmer & Berne reviewed some documents for Carnegie at that time and informed Carnegie that he would need additional information before reaching a conclusion. Ulmer & Berne sent a bill to Carnegie for that discussion. In early February 2008, Carnegie sent the additional information to Mr. Karl in

regard to the Frontier property. In mid-March 2008, Mr. Karl contacted Carnegie to discuss the additional information.

{¶20} Summit owned an office building in Twinsburg, Ohio. In August 2007, Paul Pesses, president of Carnegie, contacted Stuart Laven, an Ulmer & Berne attorney who was representing Summit in regard to the potential sale of that property. Summit and Carnegie entered into a contract for the sale of the property, but Carnegie later rescinded the agreement and demanded the return of its earnest money. In February 2008, after Summit refused, Carnegie sued Summit and Summit counterclaimed alleging, in part, fraud. Carnegie was represented by attorneys from the law firm of Miller Goler Faeges LLP, while Mr. Laven of Ulmer & Berne continued to represent Summit. Attorneys from Miller Goler spoke several times with attorneys from Ulmer & Berne, informing them of the conflict of interest created by that firm's concurrent representation of both Carnegie and Summit, and requesting their voluntary withdrawal. Miller Goler followed up with a letter demanding Ulmer & Berne's voluntary withdrawal from further representation, but Ulmer & Berne refused. Carnegie then formally moved for disqualification of Ulmer & Berne because its attorneys were continuing to represent Carnegie in the Frontier matter while representing Summit in a matter directly adverse to Carnegie. The trial court disqualified Ulmer & Berne from further representation of Summit in this matter, and this Court affirmed.

{¶21} The trial court premised its finding that Ulmer & Berne acted in bad faith in refusing to withdraw on the following preliminary findings. The existence of a conflict of interest in Ulmer & Berne's representation of both Carnegie and Summit "was readily apparent" even before Carnegie formally raised the issue by filing its motion for disqualification. Once aware of the conflict of interest, Ulmer & Berne took action to ensure that there was no internal

record of its representation of Summit in the Carnegie-Summit matter so that no conflict of interest was apparent within the firm. Ulmer & Berne recognized Carnegie as a current client at the same time that it was representing Summit in a matter adverse to Carnegie. The firm further "plainly knew that there was a conflict of interest that could not be maintained absent a waiver," likely in December 2007, but in any event by March 2008. Nevertheless, Ulmer & Berne "persisted in its position that there is no conflict requiring a waiver to this day, despite what the evidence demonstrated at the hearing." In addition, Ulmer & Berne allowed Mr. Laven, who had both a direct and indirect personal interest in continuing his representation of "an important client" like Summit to make the decision regarding how to proceed in the face of Carnegie's assertions that a conflict of interest existed. Finally, both Mr. Karl and Isaac Schulz, the ethics attorney for Ulmer & Berne, called Mr. Pesses directly in order to obtain Carnegie's waiver of any conflict of interest, despite the fact that Carnegie was being represented by counsel from Miller Goler at the time.

{¶22} This Court concludes that a law firm that is aware it is representing a client in a matter which is directly adverse to the interests of another of its current clients, yet appears to act to conceal evidence of the adverse representation, is acting with a dishonest purpose, conscious wrongdoing, and in breach of a known duty premised on an ulterior motive. A refusal to withdraw from representation of a seemingly more important or lucrative client under such circumstances evidences an ulterior motive to put firm revenue and/or prestige above the interests of other clients. We further conclude that a firm which is aware of its representation of directly adverse clients in separate matters, yet seeks a waiver of the conflict directly from one client despite the firm's knowledge that the client is represented by counsel from another firm, is acting in bad faith. By bypassing opposing counsel, the firm acts with a dishonest purpose,

moral obliquity, conscious wrongdoing, and in breach of a duty premised on an ulterior motive to obtain a benefit or advantage it could not otherwise obtain. We conclude that a firm's designated ethics attorney, who has no involvement in the representation of either client, clearly demonstrates bad faith when he contacts a client he knows to be represented by another firm in an effort to obtain a conflict waiver from that client.

{¶23} In our prior decision, this Court has already concluded that the manifest weight of the evidence supports the trial court's determination that Ulmer & Berne had an existing attorney-client relationship with Carnegie prior to that firm's representation of Summit in the Carnegie-Summit matter. *Carnegie*, 2009-Ohio-4655, ¶ 29. Moreover, we concluded that Ulmer & Berne did not do anything to terminate its relationship with Carnegie before it commenced its representation of Summit against Carnegie in the Twinsburg property matter. *Id.*

{¶24} At the hearing, Michael Goler of Miller Goler testified that he has been general primary counsel for Carnegie since 1994, although he knew that Carnegie uses other law firms for various specific legal matters. He testified that he had a conversation with Mr. Laven on January 22, 2008, to make him aware that Ulmer & Berne had a conflict of interest in representing Summit against Carnegie because of Ulmer & Berne's current representation of Carnegie in a separate matter. Mr. Goler testified that he spoke with Mr. Laven several times regarding the conflict of interest and that, "despite many different attempts" over several months to get Ulmer & Berne to voluntarily withdraw from further representation of Summit, Ulmer & Berne refused. Mr. Goler testified that he initially raised the issue privately, in a low key manner, so as to avoid the expense of litigating the issue of disqualification and avoid the potential embarrassment to Ulmer & Berne.

{¶25} On April 9, 2008, Deborah Michelson of the Miller Goler firm, co-counsel for Carnegie in the Carnegie-Summit matter, sent a letter to Messrs. Laven and Karp, more formally advising Ulmer & Berne of the conflict of interest and demanding that the firm immediately withdraw from the representation of Summit in the Carnegie-Summit matter. On June 25, 2008, Mr. Schulz sent a letter to Ms. Michelson in which he asserted unequivocally both that Ulmer & Berne was prepared to continue representing Carnegie in regard to the Frontier property matter if it could obtain Carnegie's waiver and that the firm would not withdraw from representing Summit in the Carnegie-Summit matter. Both letters were admitted into evidence.

{¶26} Mr. Pesses testified that Ulmer & Berne first notified him in mid-April 2008, that there might be a problem or conflict of interest with regard to the firm's representation of Carnegie. He testified that Mr. Karl called him between April 11 and 14, 2008, to suggest that he would like Carnegie to sign a conflict waiver before Mr. Karl performed any additional work on the Frontier matter. Mr. Pesses testified that Ulmer & Berne's ethic attorney, Mr. Schulz, left a voice mail message for him on April 15, 2008, regarding the conflict waiver notwithstanding Ulmer & Berne's knowledge that Miller Goler was representing Carnegie in the Summit matter. Mr. Schulz left his message for Mr. Pesses after Ulmer & Berne would have received Ms. Michelson's letter demanding Ulmer & Berne's withdrawal from representation of Summit. Mr. Pesses testified that he felt "violated" by Ulmer & Berne's actions, specifically the firm's attempt to obtain his conflict waiver so the firm could continue to represent Carnegie in the Frontier matter while the firm at the same time was accusing Carnegie of fraud in the Carnegie-Summit matter. Mr. Pesses admitted that he knew Ulmer & Berne ran a conflict check in regard to the Frontier matter, but he testified that Mr. Karl informed him that the check was only run on the sellers of the Frontier property, not on Carnegie.

12

**{¶27}** Messrs. Karl and Laven both addressed Ulmer & Berne's internal conflicts check procedure which is implemented when a new matter is opened at the firm. Both testified that attorneys at the firm are made aware of new firm clients based on new business reports which are circulated throughout the firm. Mr. Karl testified that he did not open a new matter when Carnegie first contacted him regarding the Frontier deal in June 2007. He testified that, when Mr. Laven sent him an email on December 14, 2007, asking whether there was any reason that Mr. Laven could not represent Summit in a matter which was adverse to Carnegie, he told Mr. Laven that there was no problem. Nevertheless, Mr. Karl admitted that he contacted the vice president of Carnegie on February 5, 2008, regarding the Frontier matter he had first addressed in June 2007. He testified that he did not initiate a new business report until March 1, 2008, and that accounting signed off on the new business report after finding no conflicts on March 5, 2008. Mr. Karl testified that Bill Edwards of Ulmer & Berne called him on March 11, 2008, to inform him of a potential conflict regarding his representation of Carnegie due to the firm's current representation of Summit. Mr. Laven had opened a new matter involving Summit on March 3, 2008.

**{¶28}** Although he testified that he alerted the firm's ethics attorney and Mr. Laven as soon as he became aware of a potential conflict based on the firm's new business reports, Mr. Karl admitted that he did not try to contact Mr. Pesses until April 11, 2008, when he left a message indicating he would need Carnegie to execute a conflict waiver so he could continue working on the Frontier matter. He denied knowing anything about Miller Goler's April 9, 2008 letter to Ulmer & Berne informing the firm that Carnegie would never waive a conflict and that it was demanding that the firm withdraw from further representation of Summit in the Carnegie-Summit matter.

{¶29} Mr. Laven represented Summit in the Twinsburg property matter with Carnegie. He testified that he initially dealt directly with Mr. Pesses in regard to the sale. Mr. Laven testified that after Carnegie terminated the transaction, however, he informed Mr. Pesses that he wished only to deal with Carnegie's counsel from Miller Goler. He admitted that he received a courtesy copy of Carnegie's complaint against Summit on February 29, 2008, several months after the parties first negotiated regarding the sale of the Twinsburg property and days before he initiated a new business report regarding his representation of Summit. Mr. Laven testified that Carnegie did not address the issue of a conflict of interest in writing until April 9, 2008, although he admitted that Mr. Goler had verbally raised the issue in an earlier telephone call. He rejected the assertion of a conflict, testifying that the attorney who opens a file on a new matter has the authority to determine whether a conflict exists.

{¶30} Mr. Laven testified that he did not bother to run a conflict check on the Carnegie-Summit matter until mid-December 2007, when the deal fell apart. He testified that he only runs a conflict check if he is involved in a "substantial" matter where the parties will be adverse. Before the "controversy erupted" on December 17, 2007, Mr. Laven worked on and billed for the Carnegie-Summit matter under the "constantly open file" for Summit, which he always uses before a case becomes "a real significant matter." He conceded that other attorneys at the firm would not know about Ulmer & Berne's involvement with a client unless a new file is opened. He admitted he did not open the new file until March 3, 2008.

{¶31} Mr. Laven testified that he saw that Mr. Karl had opened a new file on Carnegie in March 2008. He further testified that he responded to Miller Goler's April 9, 2008 letter demanding Ulmer & Berne's withdrawal from representation of Summit in the Carnegie-Summit matter by asking Miller Goler to identify the specific open matter and specific attorneys at Ulmer

& Berne representing Carnegie in another matter. Although Mr. Laven testified that he did not believe that Mr. Karl's involvement with Carnegie created a conflict, he further testified that he told Mr. Karl that he could not represent Carnegie in the Frontier matter without a conflict waiver because he (Laven) was representing Summit in a lawsuit against Carnegie.

{¶32} Based on our review of the record, there was competent, credible evidence to support the trial court's finding that Ulmer & Berne acted in bad faith in failing to voluntarily withdraw from its representation of Summit in the Carnegie-Summit matter. Both Mr. Karl and Mr. Laven delayed opening new matters when they began representing Carnegie and Summit, respectively, despite previous discussions indicating they were aware of each other's involvement with those clients. Both knew of the other's involvement with their respective clients but failed to acknowledge the conflict situation, even after Miller Goler made several informal attempts to get Ulmer & Berne to voluntarily withdraw. Instead, two attorneys from Ulmer & Berne, including the firm's ethics attorney, contacted the president of Carnegie directly, bypassing Carnegie's counsel of record from Miller Goler, in efforts to obtain a conflict waiver so Ulmer & Berne could continue to represent Summit.

{¶33} The trial court was is the best position to judge the credibility of the witnesses. *Seasons Coal Co., Inc.*, 10 Ohio St.3d 77 at 80. It declined to believe Mr. Laven's testimony that he did not open a new Summit matter because he believed the Carnegie-Summit matter would be resolved easily. There is competent, credible evidence to demonstrate that Mr. Laven delayed opening a new Summit file because he wished to continue representing Summit although he was aware that there was a conflict situation. The trial court further declined to believe Mr. Karl's testimony that he did not recognize Carnegie as a current client. There was competent, credible evidence to demonstrate that Mr. Laven inquired regarding Carnegie, that Mr. Karl denied

representing Carnegie, and that in a few short months Mr. Karl resumed working on a matter he had begun before Mr. Laven first inquired. Finally, there is competent, credible evidence to demonstrate that multiple attorneys at Ulmer & Berne acted to ignore or conceal the underlying conflict, and to press Carnegie to waive the conflict rather than simply withdrawing from representing Summit in this matter. Accordingly, the trial court's judgment is not against the manifest weight of the evidence. Summit's third assignment of error is overruled.

### III.

**{¶34}** Summit's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

MOORE, J.
WHITMORE, J.
CONCUR

APPEARANCES:

ORVILLE L. REED, III, Attorney at Law, for Appellant.

JAMES A. DEROCHE, Attorney at Law, for Appellant.

DEBORAH MICHELSON, Attorney at Law, for Appellee.