[Cite as *Sandor v. Marks*, 2014-Ohio-685.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| WILLIAM SANDOR | C.A. No. 26951 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICHARD MARKS, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No. CV 2012-11-6215 |

DECISION AND JOURNAL ENTRY

Dated: February 26, 2014

CARR, Judge.

{¶1} Appellant William Sandor appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of appellees Richard Marks and Marks & Chandler Co., L.P.A. This Court affirms.

I.

{¶2} Mr. Sandor contracted for legal representation by Mr. Marks in regard to a divorce action involving Mr. Sandor and his wife. Mr. Marks terminated the attorney-client relationship with Mr. Sandor before the divorce action was fully resolved. Mr. Sandor filed a complaint against Mr. Marks, alleging claims of legal malpractice and breach of agreement. He further asserted a claim of vicarious liability against the law office. Mr. Marks and the law office answered, denying the allegations in the complaint. They raised numerous affirmative defenses, including the defense that Mr. Sandor's claims were barred by the statute of limitations.

{¶3}    Mr. Marks and the law office subsequently filed a motion for summary judgment in which they argued that Mr. Sandor's claims were barred by the applicable statute of limitations. Mr. Sandor responded in opposition, and the defendants replied in support of their motion. The trial court granted summary judgment in favor of Mr. Marks and the law office. Mr. Sandor filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶4}    Mr. Sandor argues that the trial court erred by granting summary judgment in favor of Mr. Marks and Marks & Chandler Co., L.P.A. This Court disagrees.

{¶5}    This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶6}    Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶7}    To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶8} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶9} A legal malpractice action must be "commenced within one year after the cause of action accrued[.]" R.C. 2305.11(A). The Ohio Supreme Court clarified the determination of the time of accrual of a legal malpractice action in *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54 (1989). The *Zimmie* court held:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Id.* at syllabus.

In assessing the date of a cognizable event, courts employ an objective reasonable person standard, rather than a subjective standard. *Sesto v. Perduk*, 9th Dist. Summit No. 23797, 2008-

Ohio-664, ¶ 9, citing *Scovern v. Farris*, 9th Dist. Summit No. 17352, 1996 WL 73393 (Feb. 21, 1996), citing *Zimmie*, 43 Ohio St.3d at 58. Specifically, "it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." *Sesto* at ¶ 9, citing *Zimmie*, 43 Ohio St.3d at 58 (wherein the high court recognized the trial court's invalidation of the parties' antenuptial agreement as the cognizable event that "should have alerted a reasonable person that a questionable legal practice may have occurred."). "Courts have considered a client's dissatisfaction with his or her attorney in determining whether a cognizable event occurred." *McOwen v. Zena*, 7th Dist. Mahoning No. 11 MA 58, 2012-Ohio-4568, ¶ 32. Moreover, the injured party need not be able to assess the extent of his damages due to the questionable legal representation; rather, he need only be on notice that the attorney's legal representation was improper. *Sesto* at ¶ 13.

{¶10} The Ohio Supreme Court has defined malpractice as "professional misconduct, i.e., the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances." (Internal quotations omitted.) *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 15. Within this broad definition, courts have recognized:

> Claims arising out of an attorney's representation, regardless of their phrasing or framing, constitute legal malpractice claims that are subject to the one-year statute of limitations set forth in R.C. 2305.11(A). When the gist of a complaint sounds in malpractice, other duplicative claims are subsumed within the legal malpractice claim. Indeed, malpractice by any other name still constitutes malpractice.

(Internal citations and quotations omitted.) *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. Franklin No. 10AP-290, 2010-Ohio-5872, ¶ 15.

{¶11} In his complaint, Mr. Sandor alleged that Mr. Marks failed to properly pursue Mr. Sandor's best interests in his divorce action and seek appropriate results, failed to zealously

represent him, failed to properly inform and/or advise him concerning matters relevant to his divorce, and withdrew as counsel less than a month prior to the scheduled trial.

{¶12} In their motion for summary judgment, Mr. Marks and the law office (collectively hereinafter "Marks") argued that the statute of limitations began to run as of the following dates: (1) June 3, 2011, when Mr. Sandor expressed concern and frustration with Mr. Marks' representation in an email; (2) October 31, 2011, when Mr. Marks advised Mr. Sandor that he would be withdrawing from further representation due to Mr. Sandor's failure to pay for legal services rendered; or (3) November 7, 2011, when Marks mailed a letter to Mr. Sandor advising him that he was withdrawing from further representation due to Mr. Sandor's failure to abide by the terms of the parties' fee/retention agreement. Because the statute of limitations only began to run as of the later of either the cognizable event or termination of the attorney-client relationship, this Court first considers when the attorney-client relationship was terminated, as the alleged "cognizable event" Marks discussed occurred earlier than his two proposed relationship termination dates.

{¶13} This Court recognizes that, due to the consensual nature of the attorney-client relationship, either party's affirmative act is sufficient to terminate the relationship. *Ruf v. Belfance*, 9th Dist. Summit No. 26297, 2013-Ohio-160, ¶ 17. Therefore, the act of one party which unequivocally terminates the relationship will commence the running of the statute of limitations even though the other party is not yet aware of the termination of the relationship. *Id*. Moreover, this Court has recognized that the date on which an attorney sends notice to the client that the attorney is withdrawing from representation serves as the date of the termination of the relationship. *Niepsuj v. Glick*, 9th Dist. Summit No. 24074, 2008-Ohio-3112, ¶ 16. Other courts, too, have recognized that a client's subjective knowledge is not required before the

attorney-client relationship can be said to have terminated. *See, e.g., Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, ¶ 45-48 (6th Dist.) (recognizing that the date on which an attorney filed a motion to withdraw, not the date on which the court granted it, constituted the date of termination of the relationship).

{¶14} Marks attached the parties' "Agreement for Legal Services" to its motion. The agreement established a retainer amount to be applied to future fees, and an hourly rate upon which all billing would be based. In addition, the agreement provided that Mr. Sandor must pay all current bills and a trial retainer of $2000 if no settlement in the divorce action was reached by one month before the trial date. Moreover, the agreement provided:

> Failure to abide by this financial agreement shall constitute cause for our withdrawing from representation.
>
> * * *
>
> We reserve the right to withdraw from our representation if, among other things, irreconcilable conflicts arise with another existing client, or between our firm and you, if any fact or circumstance arises that would, in our view, render our continuing representation unlawful, unethical or inconsistent with the terms of this Agreement, or if you fail to pay our fees and expenses.

{¶15} Mr. Sandor executed the agreement on March 29, 2010, and made his initial required payment the same day, as evidenced by a copy of his March 29, 2010 email to Marks, appended to Marks' motion.

{¶16} Marks further presented Mr. Marks' affidavit in which he averred that the attorney-client relationship was established on March 29, 2010, after Mr. Sandor executed the retention agreement and submitted payment for the initial retainer. Mr. Marks additionally averred that, on October 31, 2011, Mr. Sandor had an outstanding account in the amount of $4500, including the $2000 trial retainer. He averred that he contacted Mr. Sandor that day to advise him that he would be withdrawing due to nonpayment. The attorney averred that,

although Mr. Sandor acknowledged that Mr. Marks would be withdrawing under those circumstances and asserted that he was not able to pay the amount due, Mr. Sandor nevertheless hand-delivered a check to the law office in the amount of $4500. Mr. Marks averred that he therefore delayed filing his motion to withdraw, and attempted to negotiate the check. Mr. Marks' bank, however, notified him that Mr. Sandor's check was returned for insufficient funds. Mr. Marks averred that he therefore sent a written notice to Mr. Sandor on November 7, 2011, informing him that he was terminating the attorney-client relationship and withdrawing as counsel. Mr. Marks further authenticated copies of the following documents in his affidavit: (1) correspondence and the agreement for legal services; (2) a copy of Mr. Sandor's March 29, 2010 email; (3) a copy of the November 3, 2011 correspondence from KeyBank to Mr. Marks, informing him that Mr. Sandor's $4500 check was returned for insufficient funds; (4) a copy of the November 7, 2011 letter Mr. Marks sent to Mr. Sandor terminating the attorney-client relationship; and (5) a copy of Mr. Sandor's June 3, 2011 email expressing concern about Mr. Marks' actions in regard to a letter Mr. Marks sent to Mrs. Sandor and/or her counsel.

{¶17} Based on this evidence, this Court concludes that Marks presented evidence to establish that the attorney-client relationship between Mr. Marks and Mr. Sandor terminated on November 7, 2011, when Marks sent written notice to Mr. Sandor regarding the termination, along with a time-stamped copy of the attorney's notice of withdrawal filed in the divorce action that same day.

{¶18} In opposition to Marks' motion for summary judgment, Mr. Sandor conceded having received Marks' November 7, 2011 letter and time-stamped copy of Marks' notice of withdrawal. He argued, however, that the earliest date of termination of the attorney-client relationship was November 9, 2011, the date he actually received the November 7, 2011 letter.

Mr. Sandor cited no authority for this proposition. Instead, he argued that (1) Marks failed to provide proof that the letter was mailed on the 7th; (2) the notice of withdrawal was not time-stamped until 3:44 p.m. on the 7th, making it unlikely that the letter would have been mailed the same day given the late hour; (3) Marks' motion to withdraw was not filed with the domestic relations court until November 9, 2011; and (4) the domestic relations court did not grant Marks' motion to withdraw until November 14, 2011. He concluded that the attorney-client relationship terminated on November 9, 2011, the date Marks filed his motion to withdraw. He argued that his November 8, 2012 legal malpractice complaint was therefore filed within the statute of limitations period.

{¶19} In support of his arguments, Mr. Sandor appended the following evidence to his brief in opposition: (1) a copy of the parties' fee/retention agreement; (2) a copy of Marks' November 7, 2011 termination letter; (3) his affidavit; (4) a November 7, 2011 time-stamped copy of Marks' notice of withdrawal; and (5) a copy of a child support statement for February 2013, showing his following monthly financial obligations: (a) $318.33 for child support; (b) $70.25 for medical costs; (c) $318.33 for child support; (d) $70.25 for medical costs; (e) $15.74 for poundage; and (f) $10.00 for spousal support, for a total monthly obligation of $802.91. The child support statement also showed an outstanding obligation (arrearage) of $27,265.31 as of December 31, 2012.

{¶20} Mr. Sandor averred in his affidavit that he had been unable to reach Mr. Marks by telephone in the weeks leading up to October 31, 2011, to discuss matters about his divorce. On October 31, 2011, Mr. Marks' secretary called Mr. Sandor to instruct him to bring in payment so that Mr. Marks would be able to discuss legal issues with him. Mr. Sandor averred that he brought in a check with instructions that it not be cashed for two days to allow him to deposit

sufficient funds in his account to cover the check. He averred that Marks nevertheless deposited the check, which was returned for insufficient funds. He averred that he contacted Marks' office on November 7, 2011, at which time the secretary instructed him to bring in $2500 to allow Mr. Marks to continue his representation. Mr. Sandor avowed that he brought $2500 in cash to Marks' office and "was told" that Mr. Marks would contact him to discuss the upcoming hearing in the divorce action. Finally, Mr. Sandor averred that Marks did not inform him up to and including November 7, 2011, of his intention to withdraw as counsel.

{¶21} In their reply in support of their motion for summary judgment, Marks argued that Mr. Sandor's affidavit must be discounted as self-serving. In addition, Marks appended an affidavit authenticating an attached certified mail receipt evidencing that Marks sent correspondence to Mr. Sandor on November 7, 2011.

{¶22} As a preliminary matter, this Court discusses Marks' argument that a self-serving affidavit is insufficient to raise genuine issues of material fact. As we wrote in *Copley v. Westfield Grp.*, 9th Dist. Medina No. 10CA0054-M, 2011-Ohio-4708:

> This Court has rejected the proposition of law that an affidavit alone is insufficient to carry the nonmoving party's burden. *Stone v. Cazeau*, 9th Dist. Lorain No. 07CA009164, 2007-Ohio-6213, ¶ 1 and 16 (overruling previous decisions to the contrary and holding that "a nonmoving party may defeat a properly supported motion for summary judgment with his own affidavit that demonstrates the existence of genuine issues of material fact."). This is not to say, however, that the mere existence of the nonmoving party's affidavit is sufficient to meet his reciprocal burden. While this Court will no longer discount a party's affidavit as "self serving," that affidavit may yet be ineffective to overcome the moving party's evidence if the affidavit "does not point to genuine issues of material fact." See *Estate of Malz v. Olivieri*, 9th Dist. Summit No. 23724, 2007-Ohio-7048, ¶ 7.

*Id.* at ¶ 8.

{¶23} This Court concludes that Marks met their initial burden under *Dresher* to show that the attorney-client relationship between Mr. Marks and Mr. Sandor terminated on November

7, 2011. Marks presented a copy of the November 7, 2011 termination letter and an affidavit asserting that it was sent the same day along with a time-stamped notice of withdrawal. Mr. Sandor presented no evidence that Marks delayed its mailing of the letter; instead, he merely speculated that it was unlikely that Marks mailed the letter and notice that day given that the notice was not filed with the clerk until 3:44 p.m. without "much time to ensure mailing on that date." This was not enough to rebut Marks' evidence. Nevertheless, Marks ultimately appended a copy of the certified mailing receipt evidencing that the law office sent mail to Mr. Sandor on November 7, 2011.

{¶24} In addition, Mr. Sandor's evidence that he proffered an insufficient funds check to Marks on October 31, 2011, does not prove that he continued to comply with the parties' retention agreement. Moreover, his evidence that he tendered $2500 in cash on November 7, 2011, only proves that he paid his past due account, not that he paid the $2000 trial retainer fee that was required to allow Mr. Marks to continue his representation. Under these circumstances, Mr. Sandor failed to meet his reciprocal burden under *Tompkins* to show that the attorney-client relationship was not terminated as of November 7, 2011. *Tompkins*, 75 Ohio St.3d at 449. Accordingly, Mr. Sandor's claim alleging legal malpractice, filed November 8, 2012, was barred by the one-year statute of limitations set out in R.C. 2305.11(A).

{¶25} To the extent that Mr. Sandor argues on appeal that the statute of limitations did not begin to run until some date after his subsequently retained counsel informed him that he was paying too much in spousal support, we decline to address that argument. Mr. Sandor did not raise that argument in his brief in opposition to Marks' motion for summary judgment. This Court will not review arguments that are raised for the first time on appeal. *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 9th Dist. Summit No. 25622, 2012-Ohio-1324, ¶ 8.

{¶26} As to Mr. Sandor's claim alleging breach of agreement, this Court concludes that it was subsumed within his general claim for legal malpractice. *See Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 2010-Ohio-5872, at ¶ 15. Accordingly, it too was barred by the statute of limitations.

{¶27} Finally, the Ohio Supreme Court has held that "[a] law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice. A law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice." *Wuerth*, 2009-Ohio-3601, at paragraphs one and two of the syllabus. Because the trial court did not err in rendering judgment in favor of Mr. Marks on Mr. Sandor's legal malpractice claim, summary judgment was appropriate in favor of Marks on Mr. Sandor's vicarious liability claim as well.

{¶28} For the reasons enunciated above, the trial court did not err by finding that no genuine issue of material fact existed and that Mr. Marks and the law office were entitled to judgment as a matter of law. Mr. Sandor's sole assignment of error is overruled.

III.

{¶29} Mr. Sandor's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

NATALIE F. GRUBB and DANIEL A. KIRSCHNER, Attorneys at Law, for Appellant.

COURTNEY J. TRIMACCO, HOLLY MARIE WILSON, and AMANDA M. GATTI, Attorneys at Law, for Appellee.