[Cite as *Schutte v. DiCello*, 2018-Ohio-5118.]

STATE OF OHIO )
                   )ss:
COUNTY OF SUMMIT )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

ROBERT SCHUTTE, et al.

    Appellants

    v.

ROBERT DICELLO, et al.

    Appellees

C.A. No.     28807

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-09-3822

DECISION AND JOURNAL ENTRY

Dated: December 19, 2018

---

CARR, Judge.

**{¶1}** Plaintiffs-Appellants Robert and Susan Schutte ("the Schuttes") appeal from the judgment of the Summit County Court of Common Pleas which granted the motion for summary judgment of Defendants-Appellees Robert DiCello, Esq., Mark Abramowitz, Esq., Justin Hawal, Esq., the DiCello Law Firm, and Robert DiCello, LPA (collectively "DiCello"). This Court affirms.

I.

**{¶2}** In 2012, the Schuttes sold a subdivided portion of their property on Berna Road in the City of Green to their daughter. The sale of that land caused the Schuttes' to seek alternate access to Berna Road, as their daughter's land contained a gravel road that the Schuttes' had previously used to access Berna Road. Subsequently, the Schuttes began primarily using an unimproved, City-owned drive, known as Tim Drive to access Berna Road. The Schuttes' use of Tim Drive led to conflicts with the neighboring landowners concerning use of the drive.

Ultimately, Robert Schutte was charged with a third-degree misdemeanor for spreading gravel on Tim Drive without a permit. That charge allegedly resulted in Robert Schutte losing his position with the Summit County Sheriff's Office. The prosecutor later dismissed the charge against Robert Schutte. In 2014, the City of Green passed an ordinance whereby it vacated the public land where Tim Drive was situated and burdened the Schuttes' daughter's land with an easement to be used by the neighboring land owners.

{¶3} Thereafter, the Schuttes and their daughter retained the DiCello Law Firm to represent them. Attorneys from the DiCello Law Firm then filed a complaint (henceforth referred to as "the land dispute") on behalf of the Schuttes and their daughter. The complaint sought to resolve the land dispute between the Schuttes, their daughter, the City of Green, and the neighboring landowners. Subsequently, attorneys with the DiCello Law Firm filed a second complaint on behalf of Robert Schutte ("the labor dispute") which alleged claims of malicious prosecution, selective prosecution, abuse of process, and wrongful discharge. The allegations related to the misdemeanor charge filed against Robert Schutte and his termination from the Summit County Sheriff's Office.

{¶4} As part of the litigation of the land dispute, an attorney or attorneys from the DiCello Law Firm represented to the opposing counsel of one of the neighboring landowners that the Schuttes had agreed to settle their dispute with the landowner and buy that neighboring landowner's home for $200,000. The Schuttes denied that they had reached such an agreement. On July 31, 2015, Robert Schutte sent an email addressed to Robert DiCello. In that email, Robert Schutte stated that they could not come to terms on the purchase of the home and it was "a dead issue." He requested that the law firm pursue an alternate strategy. In an August 3, 2015 email, Robert Schutte wrote Robert DiCello informing him that the Schuttes did not agree to

purchase the property for $200,000 and did not agree to release the landowner from suit. Thereafter, in an email dated August 3, 2015, Robert DiCello sent Robert Schutte an email stating that "[i]n light of recent events and correspondence, The DiCello Law Fim has decided to end its representation of you, your wife, and your daughter effective immediately." Subsequently, formal motions to withdraw were filed in both cases and were later granted.

{¶5} On September 7, 2016, the Schuttes filed a complaint against DiCello containing two claims: one for legal malpractice and a second for common law fraud. DiCello ultimately moved for summary judgment on the basis that the complaint was filed outside the applicable statute of limitations and that the Schuttes lost their cases because they lacked evidence to support their claims, not because of any malpractice. DiCello argued that the complaint was governed by the one-year statute of limitations contained in R.C. 2305.11. DiCello asserted that the attorney-client relationship terminated on August 3, 2015 and that that same date also was a day of a cognizable event. Additionally, DiCello argued that the one-year statute of limitations also controlled the claim that the Schuttes had labeled as a fraud claim as it was in essence a legal malpractice claim.

{¶6} The Schuttes opposed the motion arguing that DiCello had committed malpractice as shown through the evidentiary materials they submitted. Additionally, in a cursory fashion, the Schuttes argued that "even if the legal malpractice claims were to fail, the common law fraud claim could stand alone * * *." The brief in opposition does not mention the statute of limitations let alone develop an argument explaining how the claims were filed in a timely manner. DiCello filed a reply brief arguing that the fraud claim was a malpractice claim and thus all of the claims were filed outside the statute of limitations. Additionally, DiCello for the first

time argued that the Schuttes' fraud claim failed to allege that DiCello made a material misrepresentation to the Schuttes.

{¶7} The trial court granted DiCello's motion for summary judgment. The trial court concluded that the Schuttes' claim for common law fraud was in actuality a claim for malpractice. In so concluding, the trial court relied on a Tenth District case which held that, where the gist of the complaint sounds in legal malpractice, plaintiffs must specifically allege that defendants committed the acts for their own personal gain. *See DiPaulo v. DeVictor*, 51 Ohio App.3d 166, 173 (10th Dist.1988). The trial court found that the one-year statute of limitations applied to the Schuttes' claims, that the attorney-client relationship terminated on August 3, 2015, and that the cognizable event occurred on that date as well. Accordingly, the trial court determined that the Schuttes filed their complaint outside the statute of limitations.

{¶8} The Schuttes have appealed, raising four assignments of error, which will be addressed out of sequence to facilitate our review.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DECLARED THAT COMMON [LAW] FRAUD IS NOT ACTIONABLE UNLESS THE COMPLAINT ALLEGES THAT THE TORTFEASOR ACTUALLY RECEIVED A PECUNIARY GAIN.

{¶9} The Schuttes argue in their third assignment of error that the trial court erred in determining that, in the setting of a legal malpractice case, common law fraud is not actionable unless the complaint alleges that the defendants actually received a pecuniary gain. Because we cannot conclude that the trial court determined the foregoing, we overrule the Schuttes' assignment of error.

{¶10} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶11} Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id*. Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id*. at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶13} In its judgment entry, the trial court found that

> [i]n the instant case, Plaintiffs allege Defendants knowingly conveyed false information about an agreement to purchase real estate with the purpose of

settling a lawsuit filed by Defendants on behalf of Plaintiffs. This alleged conveyance of information occurred during Defendants' representation of Plaintiffs in [the land dispute]. In order for Plaintiffs to overcome the presumption Defendants acted in good faith during their representation of Plaintiffs, Plaintiffs are required to specifically allege Defendants engaged in this conduct for their own personal gain. Here, Plaintiffs failed to make any such specific allegations in their complaint.

**{¶14}** In so doing, the trial court relied on language in *DiPaulo*, 51 Ohio App.3d at 173. Therein, the Tenth District stated that, "[i]n order to rebut that presumption and sufficiently allege a cause of action for fraud against attorneys in a situation where the gist of the complaint involves legal malpractice,* * * plaintiffs must have specifically alleged that defendants committed the actions for their own personal gain. To hold otherwise would be to undermine the purpose and focus of the malpractice statute. Moreover, such requirement is in keeping with the particularity generally necessary to have a well-pleaded complaint in fraud." *Id.* at 173. We note that the Tenth District and the trial court referred to "personal gain" not pecuniary gain. *See DiPaulo*, 51 Ohio App.3d at 173. The two are not synonymous. Pecuniary gain is gain "consisting of or measured in money[,]" while personal gain is gain that is "of, relating to, or affecting a particular person[.]" *Merriam-Webster's Collegiate Dictionary* 912, 924 (11th Ed.2004).

**{¶15}** Irrespective of whether we agree with the Tenth District's holding in *DiPaulo*, we do not read either the Tenth District or the trial court as requiring plaintiffs to allege that defendants received a pecuniary gain. Instead, the trial court concluded that the Schuttes had to allege that the Defendants "engaged in th[e] conduct for their own personal gain." Accordingly, as the Schuttes' stated assignment of error is limited to arguing that the trial court erred in determining something we conclude it did not determine, we overrule the Schuttes' assignment of error on that basis. *See State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 14

("This Court will not address arguments that fall outside the scope of an appellant's captioned assignment of error."). Moreover, as we conclude below that the trial court did not err in merging the fraud claim into the malpractice claim, we see no basis to further address this assignment of error. The Schuttes' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT COMMON LAW FRAUD MERGES WITH THE TORT OF LEGAL MALPRACTICE.

**{¶16}** In their fourth assignment of error, the Schuttes argue that the trial court erred in concluding that the fraud claim merged into their claim for legal malpractice.

**{¶17}** "The Ohio Supreme Court has defined malpractice as 'professional misconduct, i.e., the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances.'" *Sandor v. Marks*, 9th Dist. Summit No. 26951, 2014-Ohio-685, ¶ 10, quoting *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St. 3d 594, 2009-Ohio-3601, ¶ 15. This Court has recognized that "[c]laims arising out of an attorney's representation, regardless of their phrasing or framing, constitute legal malpractice claims that are subject to the one-year statute of limitations set forth in R.C. 2305.11(A)." (Internal quotations and citations omitted.) *Sandor* at ¶ 10. "When the gist of a complaint sounds in malpractice, other duplicative claims are subsumed within the legal malpractice claim. Indeed, malpractice by any other name still constitutes malpractice." (Internal quotations and citations omitted.) *Id.*

**{¶18}** The allegations of the Schuttes' fraud claim are as follows:

Due to one o[r] more Defendants falsely telling counsel for [a neighboring landowner in the land dispute] that the Schuttes agreed to "settle" their dispute with him and agreed to purchase [the landowner's] house for $200,000, one or

more Defendants knowingly conveyed false information, and this fraud caused financial damage to the Schuttes.

During the October 27, 2015 evidentiary hearing, Schuttes' new counsel produced emails between the Schuttes and Defendant DiCello proving that DiCello conveyed false information to [the landowner's] attorney concerning the "agreed settlement" to purchase the house for $200,000.

**{¶19}** Here, there is no doubt that the allegations raised in the Schuttes' fraud claim arose out of DiCello's representation of the Schuttes. The Schuttes even included similar facts in their allegations in their self-described legal malpractice claim. Further, even the Schuttes' expert in his report characterized these facts as malpractice; the Schuttes' expert noted that it was "a breach of the standard of care to represent an offer that is not an actual offer from a client." Given the foregoing, and this Court's precedent, we conclude that the trial court did not err in concluding that the fraud claim merged into the malpractice claim and was therefore subject to the one-year statute of limitations. *See* R.C. 2305.11(A).

**{¶20}** The Schuttes' fourth assignment of error is overruled.

## <u>ASSIGNMENT OF ERROR I</u>

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE LEGAL MALPRACTICE CAUSES OF ACTION WHEN IT FAILED TO APPLY THE "TERMINATION RULE" PER R.C. 2305.11(A), TO BOTH CIVIL CASES.

**{¶21}** The Schuttes argue in their first assignment of error that the trial court erred in granting summary judgment on the Schuttes' legal malpractice claim when it failed to apply the termination rule to both underlying cases. Because the trial court's entry does not suggest that it failed to apply the termination rule to both cases, we conclude the Schuttes' stated assignment of error is without merit. Instead, it is apparent that the trial court concluded that the attorney-client relationship terminated in both cases on the same date.

**{¶22}** The Supreme Court has held that "[u]nder R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter, & Griswold*, 43 Ohio St.3d 54 (1989), syllabus.

**{¶23}** In the instant matter the trial court determined that it was clear from the facts that DiCello "terminated the attorney-client relationship with Plaintiffs on August 3, 2015 and that Plaintiffs were aware of the termination of that relationship." August 3, 2015 was the date of the email sent to the Schuttes which stated in part that the "DiCello Law Firm has decided to end its representation of you, your wife, and your daughter effective immediately." That email was discussed in the trial court's judgment entry. Additionally, the trial court specifically referenced in its judgment entry that, during Robert Schutte's deposition, "he explained he understood Defendants withdrew from representation in *both cases* because of his failure to purchase the [neighboring] property." (Emphasis added.) Nothing in the trial court's judgment entry leads this Court to conclude that the trial court was only determining a termination date for one of the cases. Thus, the Schuttes' stated assignment of error is without merit. To the extent the Schuttes argue that two other termination dates were the appropriate termination dates, such is outside the scope of their stated assignment of error. *See Jackson*, 2018-Ohio-1285, at ¶ 14. Additionally, we note that the Schuttes' did not argue below that different termination dates applied to their cases. The Schuttes' first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND A SINGLE COGNIZABLE EVENT EXISTED FOR TWO SEPARATE CASES OF LEGAL MALPRACTICE.

{¶24} In their second assignment of error, in a conclusory fashion, the Schuttes argue that the trial court erred in finding that a single cognizable event existed for both underlying civil cases.

{¶25} As noted above, a legal malpractice claim accrues "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie* at 43 Ohio St.3d 54, at syllabus. "In assessing the date of a cognizable event, courts employ an objective reasonable person standard, rather than a subjective standard." *Sandor*, 2014-Ohio-685, at ¶ 9. "Specifically, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." (Internal quotations and citations omitted.) *Id.* "Courts have considered a client's dissatisfaction with his or her attorney in determining whether a cognizable event occurred. Moreover, the injured party need not be able to assess the extent of his damages due to the questionable legal representation; rather, he need only be on notice that the attorney's legal representation was improper." (Internal citations and quotations omitted.) *Id.*

{¶26} In its motion for summary judgment, DiCello argued that August 3, 2015 represented the date of the cognizable event. In their brief in opposition to the motion for summary judgment, the Schuttes made no argument to counter DiCello's claim that the

cognizable event occurred August 3, 2015; in fact they did not even mention the statute of limitations. *See Sandor* at ¶ 25 ("This Court will not review arguments that are raised for the first time on appeal.").

{¶27} In its judgment entry, the trial court opined that, upon receiving the August 3, 2015 email, which also terminated the attorney-client relationship, the "Plaintiffs were put on notice Mr. DiCello acted beyond his authority (as asserted by Mr. and Mrs. Schutte) by discussing the $200,000 purchase price of the [neighboring] property with the potential seller. In their complaint, Plaintiffs complain that this act, specifically, caused them harm." Thus, the trial court concluded that August 3, 2015 was the date of the cognizable event.

{¶28} On appeal, the Schuttes have not explained how, in light of the evidence and argument presented to the trial court, the trial court erred in concluding that the cognizable event occurred on August 3, 2015. *See* App.R. 16(A)(7). Nor have they pointed to case law that would suggest that a trial court is required to determine that there were multiple cognizable events under the facts of this case. *See* App.R. 16(A)(7). In fact, much of the Schuttes' argument in this assignment of error does not even address cognizable events. Thus, we can only conclude that the Schuttes have not met their burden on appeal to demonstrate that the trial court erred.

{¶29} The Schuttes' second assignment of error is overruled.

III.

{¶30} The Schuttes' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellants.

ORVILLE L. REED, III, and DAVID W. HILKERT, Attorneys at Law, for Appellees.