[Cite as *State v. Ellis*, 2014-Ohio-4186.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 27013 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD ELLIS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 12 3400 |

DECISION AND JOURNAL ENTRY

Dated: September 24, 2014

CARR, Judge.

**{¶1}** Appellant Edward Ellis appeals his conviction from the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Ellis was indicted on one count of aggravated trafficking in drugs and one count of aggravated possession of drugs (methamphetamine). He pleaded not guilty and subsequently waived his right to a trial by jury. At the conclusion of the bench trial, the court found Ellis not guilty of aggravated trafficking but guilty of aggravated possession, and sentenced him accordingly. Ellis filed a timely appeal in which he raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED DEFENSE COUNSEL'S [CRIM.R. 29] MOTION AND FOUND THAT THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED A GUILTY VERDICT IN COUNT TWO OF THE INDICTMENT.

{¶3} Ellis argues that the trial court erred by denying his Crim.R. 29 motion for acquittal because his conviction for aggravated possession was not supported by sufficient evidence. He further argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

{¶4} Crim.R. 29 provides, in relevant part:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶5} "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 113, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Diar* at ¶ 113, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶6} Ellis was convicted of aggravated possession of methamphetamine in violation of R.C. 2925.11(A)(C)(1) which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog[,]" where "the drug involved * * * is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs[.]" R.C. 3719.01(C) states that "[c]ontrolled substance means a drug, compound, mixture, preparation or substance included in schedule I, II, III, IV or V." The controlled substance in this case was

methamphetamine. Methamphetamine is classified as a Schedule II controlled substance and a stimulant under R.C. 3719.41, Schedule II (C)(2). R.C. 2925.11(C)(1)(b) states that "[i]f the amount of the drug equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense." R.C. 2925.01(D)(1)(g) defines a "bulk amount" as "an amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant." The amount of methamphetamine at issue was 3.52 grams.

{¶7} R.C. 2901.22(B) states:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶8} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶9} During trial, the parties stipulated to the authenticity and admission of the substance of two lab reports as to the identity of the drug at issue. Both reports identified the drug as methamphetamine. The amount first tested weighed 3.52 grams, while the second testing indicated that the substance weighed 3.18 grams. Use of a portion of the drugs during the initial testing accounted for the reduced weight at the second testing.

{¶10} The State presented the testimony of three witnesses.

{¶11} Inspector Marc Kudley works for the United States Postal Service Inspection Service, a law enforcement and security branch of the postal service. The branch strives to protect against the illegal and dangerous use of the postal service, investigating mail fraud, child

exploitation, and the transport of drugs through the mail. While on a routine visit to the Akron post office on South Arlington in November 2012, Mr. Kudley was looking through Express Mail labels for prior delivered packages. He knew, based on his training and experience, that drug traffickers commonly sent drugs via Express Mail because of the timeliness of next day delivery, the ability to track the package en route, and the flat mailing rate. Accordingly, he was looking at the labels to identify trends. During his routine review, he noticed multiple packages from Phoenix, Arizona, to 765 Frase Avenue, in Akron. Mr. Kudley was additionally alerted by those deliveries because Arizona is a known "source state," a state from which drugs have historically been sent to target states like Ohio.

{¶12} During the course of his investigation, Mr. Kudley noticed, as to the 16 packages mailed to the Frase Avenue address, that the names of the senders and recipients varied but were similar and consisted of a combination of select, fairly common names. For example, the surnames West, Westly, and Cox were used repeatedly with various first names. Nevertheless, the handwriting on the numerous mailing labels appeared consistent. In addition, Mr. Kudley noticed that all the mailing labels contained a signature waiver, meaning that no signature was required upon delivery. Based on his training and experience, he knew it was very common for drug parcels to contain a signature waiver so that the recipient need not have contact with a postal employee who would simply leave the package at the door.

{¶13} Mr. Kudley noticed that 12 of the packages sent to the Frase Avenue address bore a sender's address of 9440 N. 23rd Avenue, in Phoenix. He ran the names of the senders and recipients against the addresses on the mailing labels and could not associate any purported sender or recipient with the respective addresses. This caused him greater concern because it

appeared that fictitious names were intentionally being used. Mr. Kudley described these actions as his routine method of investigating illegal uses of the postal service.

{¶14} Mr. Kudley testified that a combination of red flags, particularly the use of fictitious names, gave him reasonable suspicion to believe that these packages may have contained something illegal. He asked the supervisor at the Akron post office to notify him if another Express Mail package was received for processing from Phoenix to the Frase Avenue address. On December 5, 2012, he received such notification. The label contained a signature waiver, and Mr. Kudley could not associate the purported sender and recipient with the corresponding addresses on 23rd Avenue, in Phoenix, and Frase Avenue, in Akron. Believing the package may contain an illegal substance, Mr. Kudley called Detective Chris Carney, with whom he had worked on prior such investigations.

{¶15} Detective Carney of the Akron Police Department Narcotics Unit, responded with a drug dog ("Cruiser") and conducted an open air sniff after first telling a postal employee to place the package under something so that the canine could not have contact with it. Cruiser alerted within seconds. Mr. Kudley applied for a federal search warrant for the package based on probable cause arising from the canine's alert. The warrant was obtained. Upon opening the package, Detective Carney became fearful that the dog had falsely alerted because he saw only a magazine. Upon opening the magazine, however, he found a plastic bag containing methamphetamine. Thereafter, Mr. Kudley and Detective Carney decided to conduct a controlled delivery of the package to the Frase Avenue address. Detective Carney obtained an anticipatory search warrant for 765 Frase Avenue based on the intention that the package would be taken inside the residence.

{¶16} The investigators resealed the package. Mr. Kudley borrowed a postal delivery vehicle, donned a postal uniform, and delivered the package containing methamphetamine to 765 Frase Avenue, as a SWAT team monitored the situation. Mr. Kudley knocked on the door. When no one answered, he left the package between the storm door and front door and walked towards his vehicle. As he was walking, he heard the residence door open, but he did not turn to look so as not to arouse suspicion. Once in his vehicle, he looked and saw that the package had been removed from the door.

{¶17} Minutes after the package was taken inside the residence, the SWAT unit entered and secured the persons inside in preparation for the narcotics detectives' entry and investigation. Detective Carney and Inspector Kudley both entered the residence and saw Ellis, already handcuffed, in the kitchen. They further saw that the subject package had been ripped open and was lying on the counter. Detective Carney and Mr. Kudley took Ellis to another room to question him. The detective read Ellis his *Miranda* warning and asked about the package. Both the detective and Mr. Kudley testified that Ellis informed them that he was a junkie, that the package was his, and that his mother had been sending him crystal methamphetamine from Arizona. Ellis stated that he had no money and that he was not paying his mother for the drugs.

{¶18} Sergeant Michael Stott, a supervisor in the narcotics unit of the Akron police department, was involved in the execution of the search warrant. Although the residence at 765 Frase Avenue belonged to Ellis' grandparents who were in their nineties, Sergeant Stott found mail addressed to Ellis at that residence in the basement. No one investigating the matter believed that the package containing drugs belonged to Ellis' elderly and frail grandparents, based in large part on Ellis' immediate confession. Moreover, Ellis never told Detective Carney

or Mr. Kudley that the package belonged to his grandparents. On the contrary, he admitted that the drugs were his.

{¶19} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of the charge of aggravated possession of drugs were proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that the package contained over three grams of methamphetamine. After the controlled delivery, the police found Ellis in the kitchen with the package that was partially opened. Ellis admitted that the drugs were his and that his mother had sent them to him. Accordingly, the State presented sufficient evidence of the crime of aggravated possession of methamphetamine, and the trial court did not err by overruling his Crim.R. 29 motion for acquittal.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5.

{¶20} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387. This Court will not overturn the trial court's verdict on a manifest weight

of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22.

{¶21} Mr. Kudley testified that some, but not the instant one, of the Express Mail packages sent from Phoenix to Frase Avenue, in Akron, were mailed to a recipient with a fictitious name in care of Stella Taylor. Stella Taylor was Ellis' grandmother who lived in the home. Nevertheless, Ellis denied that the drugs in the package belonged to either of his grandparents. In fact, both Detective Carney and Mr. Kudley testified that Ellis admitted that the drugs were his and that his mother in Arizona had sent them to him. Detective Carney testified that Ellis' mother has been arrested in Arizona for conspiracy to traffic in methamphetamine. The State presented photographs of still images of a security video taken at a post office in Phoenix on the day the subject package was mailed to Ellis. Those images, paired with a certified duplicate of information and photograph of Ellis' mother obtained from the Arizona Department of Transportation, Motor Vehicle Division, demonstrated that Ellis' mother stood at a counter in the post office and mailed an Express Mail package that day.

{¶22} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Ellis. The weight of the evidence supports the conclusion that Ellis possessed the methamphetamine in the package. Minutes after the controlled delivery, Ellis was found by police in the kitchen where the package lay on the counter, partially opened. He admitted that he was an addict and that his mother was sending him drugs from Arizona, where she was seen mailing an Express Mail package the same day as the subject package was sent. Although Ellis' grandparents lived in the home where the package was delivered, Ellis did not accuse his grandparents of being the intended recipients of the drugs,

but rather admitted that the drugs belonged to him. Accordingly, Ellis' conviction for aggravated possession of drugs is not against the weight of the evidence.

{¶23} Ellis' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED DEFENSE COUNSEL'S OBJECTION TO THE STATE GARNERING TESTIMONY AND INTRODUCING EVIDENCE ABOUT PREVIOUS MAILINGS, AS BOTH WERE IRRELEVANT AND PREJUDICIAL.

{¶24} Ellis argues that the trial court erred by admitting evidence about previous mailings from Phoenix to Akron, because such evidence was irrelevant and prejudicial. This Court disagrees.

{¶25} The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶26} Evid.R. 402 limits the admission of evidence to relevant evidence. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403(A) prohibits the admission of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice * * *." The

determination whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice lies in the sound discretion of the trial court. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. "'Evid.R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant.'" *Id.*, quoting *State v. Wright*, 48 Ohio St.3d 5, 8 (1990). The Ohio Supreme Court has stated that "relevant evidence, challenged as being outweighed by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect to one opposing admission." *State v. Frazier*, 73 Ohio St.3d 323, 333 (1995).

{¶27} Although Ellis also cites Evid.R. 404(B) regarding evidence of other crimes, wrongs or acts, he constrained his objection below to the relevancy of the challenged evidence. This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6. "[F]orfeiture is a failure to preserve an objection[.] * * * [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. By failing to raise the issue below, Ellis has forfeited any objection to the admission of other acts evidence. Further, as Ellis has failed to argue plain error on appeal, this Court will not consider whether the admission of the disputed evidence within the context of Evid.R. 404(B) constituted plain error. *See State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 10.

{¶28} Ellis argues that evidence relating to 20 other packages mailed via Express Mail from Arizona to three addresses in Akron, most of which involved the 765 Frase Avenue

residence, all with signature waivers, and sent during the period of March through November 2012, was not relevant to the charges of trafficking and possession. This Court concludes that the evidence of the prior mailings was relevant because it served as foundation for the criminal investigation. This evidence provided the necessary understanding of how the postal service conducts investigations to discover when the mail is being used for illegal and/or dangerous purposes, and what activities gave rise to the obtainment of the two search warrants which allowed the police to pursue ongoing investigation. Accordingly, such background information was relevant to both charges. With respect to the possession charge, the probative value of this evidence was not outweighed by the potential for unfair prejudice in light of evidence of Ellis' confession that the drugs belonged to him, having been sent to him by his mother for his personal use. With respect to the trafficking charge, even assuming that the probative value of this evidence was outweighed by the potential for unfair prejudice, any error in its admission would be harmless given that Ellis was acquitted of this charge.

{¶29} It is significant to note that Ellis was convicted after a bench trial. "In contrast to juries, judges are presumed to know the law and expected to consider only relevant, material, and competent evidence during their deliberations." *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, ¶ 57; *State v. Olah*, 146 Ohio App.3d 586, 593 (9th Dist.2001). Accordingly, this Court presumes that the trial judge did not consider any evidence that was not relevant to the issues before him.

{¶30} Ellis' second assignment of error is overruled.

III.

{¶31} Ellis' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.