[Cite as *State v. Jackson*, 2018-Ohio-1285.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

ANDREW JACKSON, III

    Appellant

C.A. No.     28691

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR-2016-03-0737-B

DECISION AND JOURNAL ENTRY

Dated: April 4, 2018

---

TEODOSIO, Judge.

{¶1} Appellant, Andrew Jackson III, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Based on a drug trafficking investigation focusing on Mr. Jackson and 1016 Beardsley Street in Akron, police officers obtained a search warrant for the residence at 1016 Beardsley Street. On the day the search warrant was to be executed, police watched the residence and waited until they saw Mr. Jackson and his sister leave the residence together in a rental car. Police conducted a traffic stop of the vehicle several blocks away from the residence and arrested Mr. Jackson. Officers returned Mr. Jackson to the residence, read him his *Miranda* rights, and questioned him during the search of the residence. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

{¶3} Police discovered large amounts of drugs, cash, and other evidence of drug trafficking in a bedroom. A letter addressed to Mr. Jackson with 1016 Beardsley Street listed as his address was found on a bedroom dresser amongst the contraband. A firearm was also found in a woman's purse in the bedroom. While speaking to police at the scene, Mr. Jackson admitted that the drugs were his and, before anyone told him that a gun had been found, he asked if his sister had taken ownership of the gun.

{¶4} Mr. Jackson filed a motion to suppress and a supplemental motion to suppress, which were denied by the trial court. The case proceeded to a jury trial and Mr. Jackson was found guilty of aggravated trafficking in drugs, aggravated possession of drugs, trafficking in heroin, possession of heroin, and having weapons while under disability. The possession counts merged into the trafficking counts, and the trial court sentenced Mr. Jackson to an aggregate total of six years mandatory prison time.

{¶5} Mr. Jackson now appeals from his convictions and raises four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF APPELLANT JACKSON'S FOURTH, FIFTH, AND SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS TEN AND FOURTEEN OF THE OHIO CONSTITUTION.

{¶6} In his first assignment of error, Mr. Jackson argues that the trial court erred in failing to grant his motion to suppress. Specifically, he argues that his statements to the police were made involuntarily and the search warrant for 1016 Beardsley Street was defective as it failed to establish probable cause. We disagree.

**{¶7}** A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

<u>Mr. Jackson's Statements to Police</u>

**{¶8}** Mr. Jackson filed a motion to suppress and sought suppression of all statements made to the police. He conceded in his motion that the police initially read him his *Miranda* rights before he made any statements, but argued that they failed to read him his *Miranda* rights again when he spoke to the police a second time prior to being transported to jail. He also argued that his statements were involuntary because the police threatened to arrest both his mother and sister and further threatened to have his mother's house seized and forfeited.

**{¶9}** Akron Police Detective Brian Callahan testified at the suppression hearing that Mr. Jackson was handcuffed and in custody. Detective Callahan testified that, prior to any questioning, he read Mr. Jackson his *Miranda* rights off of the Akron Police Department's "*Miranda* card." He testified that Mr. Jackson verbally acknowledged that he understood each and every right individually. Akron Police Sergeant Jason Mallick testified that he was present when Detective Callahan read Mr. Jackson his *Miranda* rights. Sergeant Mallick testified that Mr. Jackson indicated he understood all of his rights. Detective Callahan testified that he then asked Mr. Jackson if he was willing to speak to him and Mr. Jackson replied, "Yes." The detective questioned Mr. Jackson for two or three minutes. Twenty minutes later, while Mr.

Jackson was in the back of a police vehicle outside waiting to be transported to jail, he asked to speak to Detective Callahan again. The detective did not *Mirandize* Mr. Jackson again, but spoke to him for another minute or two. Detective Callahan and Sergeant Mallick both testified at the hearing that they did not threaten Mr. Jackson in any way, nor did they observe any other officers threaten Mr. Jackson. The officers also testified that no one threatened to seek forfeiture of the house or to arrest any of Mr. Jackson's family members.

{¶10} The trial court found that Detective Callahan read Mr. Jackson his *Miranda* rights and that Mr. Jackson verbally acknowledged that he understood his rights and waived them. After reviewing the record, we conclude that the trial court's findings are supported by competent, credible evidence.

{¶11} The State must prove by a preponderance of evidence that a waiver of *Miranda* rights is knowingly, intelligently, and voluntarily made. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 107. To determine whether a confession was involuntary, courts "'consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *Id.*, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus, *death penalty vacated on other grounds*, 438 U.S. 911 (1978). "[W]e will not conclude that a waiver was involuntary '*unless* there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep.'" (Emphasis sic.) *Id.* at ¶ 107, quoting *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 35.

{¶12} Here, Mr. Jackson offered no evidence at the suppression hearing of any threats or otherwise improper conduct by the police. On the contrary, two officers testified specifically

that they did not threaten Mr. Jackson and did not observe any other officers threaten him. The officers further testified that no one threatened to seek forfeiture of the house or to arrest any of Mr. Jackson's family members. Therefore, as the trial court was in the best position to hear the testimony and evaluate the credibility of witnesses, we defer to the trial court's assessment of this matter and conclude that any statements made by Mr. Jackson during police questioning at the scene were voluntarily made.

{¶13} In his merit brief, Mr. Jackson also argues for the first time that he was continually questioned by police "in spite of his clear request to contact his attorney." However, he improperly cites to the trial transcript in support of this argument, the contents of which were not available to the trial court at the time it ruled on the motion to suppress. Mr. Jackson did not testify at the suppression hearing or present any evidence at all. We cannot consider any testimony procured during trial in rendering a decision on an assignment of error that focuses solely on a motion to suppress. *See State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 13. Furthermore, as Mr. Jackson did not raise this particular issue in his motion to suppress or at the suppression hearing, he may not now argue it for the first time on appeal. *See State v. Nestor*, 9th Dist. Summit No. 27800, 2016-Ohio-1333, ¶ 18. Accordingly, Mr. Jackson has forfeited this particular argument for purposes of appeal and we decline to address it. *See State v. Palmer*, 9th Dist. Summit No. 28303, 2017-Ohio-2639, ¶ 11.

<u>Search Warrant and Supporting Affidavit</u>

{¶14} As to the search warrant and supporting affidavit, Mr. Jackson's stated assignment of error initially gives us pause as it challenges the trial court's failure to suppress his statements, but it does not state with specificity his challenge to the search warrant or supporting affidavit. This Court has consistently held that an appellant's captioned assignment of error

provides us with a roadmap on appeal and directs our analysis. *E.g.*, *State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 18. "This Court will not address arguments that fall outside the scope of an appellant's captioned assignment of error." *Id.* While we could conceivably decline to address Mr. Jackson's challenge to the search warrant and supporting affidavit on this basis alone, we will instead liberally construe his statement in this assignment of error that the trial court "failed to suppress *all evidence* and statements" as challenging the admissibility of his statements as well as the search warrant and supporting affidavit. (Emphasis added.)

{¶15} In his supplemental motion to suppress, Mr. Jackson argued that the search warrant was defective on its face, as it failed to establish probable cause. He challenged the affidavit in support of the search warrant, including the credibility of the confidential informant, the two controlled buys, the knowledge and experience of the affiant, and the lack of a link between himself and the residence to be searched.

{¶16} "To determine if an affidavit in support of a search is supported by probable cause, a judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Myers*, 9th Dist. Summit No. 27576, 2015-Ohio-2135, ¶ 10, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). Courts should give "great deference" to the determination of probable cause made by the judge or magistrate who issued the search warrant. *Myers* at ¶ 10. The applicable standard of review is as follows:

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate

court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, * * * doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.*, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus.

{¶17} "'Probable cause means the existence of evidence, less than the evidence that would justify condemnation, such as proof beyond a reasonable doubt or by a preponderance; in other words, probable cause is the existence of circumstances that warrant suspicion.'" *State v. Tejada*, 9th Dist. Summit No. 20947, 2002-Ohio-5777, ¶ 8, quoting *State v. Young*, 146 Ohio App.3d 245, 254 (11th Dist.2001). Under that definition, while a prima facie showing of criminal activity is not required, we must instead look for the probability of criminal activity. *Myers* at ¶ 11. "When conducting a review of the probable cause behind a search warrant, we are mindful that we are 'limited to the four corners of the search warrant affidavit.'" *Id.*, quoting *State v. Russell*, 9th Dist. Summit No. 26819, 2013-Ohio-4895, ¶ 9.

{¶18} In the case sub judice, the trial court found that there was probable cause for the issuing judge to sign the search warrant.

{¶19} Detective Callahan is a member of the Akron Police Department, has been employed there for the past nineteen years, and is currently assigned to the Akron Narcotics Detail. In the affidavit supporting the search warrant, he avers that "the information source * * * has provided [the detective] with information concerning the possession and sale of controlled substances in the [Akron area], which information has been corroborated by [the detective]." He further avers that "the information source has displayed [] specific knowledge as to the uses, effects[,] and distribution patterns of controlled substances in the [Akron area]." "'It is not

essential that the affiant swear that the informant supplied reliable information in the past, but it is generally held that a statement that the informant has been reliable in the past is sufficient.'" *State v. Beauford*, 9th Dist. Summit No. 25767, 2011-Ohio-5628, ¶ 10, quoting *State v. Karr*, 44 Ohio St.2d 163, 166, (1975).

{¶20} Regarding the first controlled buy, which was performed within eight days of the affidavit, Detective Callahan avers that the confidential source was searched and then provided with money to purchase heroin. He avers that the police observed a black male exit 1016 Beardsley Street and get into a black Ford Fusion with a specific Florida license plate number. Surveillance units followed the vehicle to the area of Wilbur Avenue and Stanton Avenue. Detective Callahan avers that he observed the confidential source meet with the vehicle. Afterward, the source returned a quantity of heroin to the detective, which the source stated he purchased from Mr. Jackson.

{¶21} Regarding the second controlled buy, which was performed within three days of the affidavit, Detective Callahan avers that the confidential source was again searched and provided with money to purchase heroin. He avers that the police observed a black male exit 1016 Beardsley Street and get into a black Ford Fusion with a specific Florida license plate number, which was parked in front of the residence. Surveillance units followed the vehicle, but lost sight of it near Grant Street and South Street. Fifteen minutes later, police saw the vehicle pull into the driveway of 1127 Wilbur Avenue and meet the source. Police observed the source walk up to the vehicle. Detective Callahan avers that, shortly thereafter, he followed the source back to their meeting location. The source returned a quantity of heroin to the detective, which the source stated he purchased from Mr. Jackson.

{¶22} Detective Callahan also avers that when Mr. Jackson was arrested several months ago for carrying concealed weapons and having weapons while under disability, he provided an address of 1016 Beardsley Street, Akron, Ohio. He further avers that the grey Porsche Cayenne currently parked near 1016 Beardsley Street is registered to Mr. Jackson, whose listed address on the vehicle's registration is 1016 Beardsley Street, Akron, Ohio.

{¶23} In giving great deference to the issuing judge's determination, we conclude that, given all the circumstances set forth in the affidavit, there was a substantial basis for determining that probable cause existed to search Mr. Jackson's residence located at 1016 Beardsley Street. The affidavit provided information supporting the probability that drugs or evidence of drug trafficking would be found at Mr. Jackson's residence. Even considering the fact that officers lost sight of Mr. Jackson for fifteen minutes during one of the two controlled buys, doubtful or marginal cases should be resolved in favor of upholding the warrant. *See Myers*, 2015-Ohio-2135, at ¶ 10, quoting *George*, 45 Ohio St.3d 325, at paragraph two of the syllabus. We therefore conclude that the trial court did not err in finding that there was sufficient probable cause to sign the search warrant.

{¶24} Accordingly, we conclude that the trial court did not err in denying Mr. Jackson's motion to suppress and supplemental motion to suppress.

{¶25} Mr. Jackson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

EXHIBIT 22A SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE BECAUSE IT PROVIDED DIRECT EVIDENCE OF "OTHER ACTS" AND ITS PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT

{¶26} In his second assignment of error, Mr. Jackson argues that the trial court erred by admitting prejudicial "other acts" evidence, specifically a redacted letter addressed to him from

his attorney. We decline to address this assignment of error as Mr. Jackson has not properly preserved his "other acts" argument for appeal and has furthermore made no meaningful argument in support of his claim of prejudice.

{¶27} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "Proof of one of these purposes must go to an issue which is material in proving the defendant's guilt for the crime at issue." *State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 10. Trial courts conduct a three-step analysis in determining whether to admit other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Baskerville*, 9th Dist. Summit No. 28148, 2017-Ohio-4050, ¶ 7, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.

{¶28} "The admission or exclusion of evidence rests soundly within the trial court's discretion." *State v. Scheck*, 9th Dist. Medina No. 05CA0033-M, 2006-Ohio-647, ¶ 13. Therefore, we review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *Id.* "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion

standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶29} Upon review of the record, we note that Mr. Jackson's trial counsel made two general objections to the admission of the redacted letter into evidence, simply claiming that it was prejudicial and not relevant to the case. He later renewed these objections. "Evid.R. 402 limits the admission of evidence to relevant evidence." *State v. Ellis*, 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 26. "Evid.R. 403(A) prohibits the admission of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice * * *.'" *Id.*, quoting Evid.R. 403(A). However, at no time did Mr. Jackson's trial counsel specifically object to the letter as being improper "other acts" evidence under Evid.R. 404(B). *See State v. Kuhar*, 9th Dist. Medina No. 15A0053-M, 2016-Ohio-5280, ¶ 14-15 (concluding that two general objections, without a specific objection to evidence as "other acts" evidence pursuant to Evid.R. 404(B), forfeits all but plain error as to any Evid.R. 404(B) challenge). Consequently, Mr. Jackson has forfeited all but plain error as to his Evid.R. 404(B) argument. *See id.* at ¶ 15. Mr. Jackson has not argued plain error on appeal and this Court will not create a plain error argument on his behalf. *See id.*

{¶30} Mr. Jackson also briefly references Evid.R. 403 as prohibiting unfairly prejudicial evidence, but he makes no meaningful argument as to the rule's application to this case beyond stating: "[E]ven if the other acts evidence was not barred by Evidence Rule 404(B), it should have been excluded under Evidence Rule 403, since it was unfairly prejudicial." *See* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on

which appellant relies"); *accord* Loc.R. 7(B)(7); *see also* App.R. 12(A)(2) ("The [C]ourt may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)"); *accord* Loc.R. 7(F). This Court will not construct an Evid.R. 403 argument on Mr. Jackson's behalf. *See Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 & 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

{¶31} Accordingly, Mr. Jackson's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE CONVICTIONS AND, AS A RESULT, APPELLANT JACKSON'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSITUTION (SIC) WERE VIOLATED

{¶32} In his third assignment of error, Mr. Jackson argues that his convictions were based on insufficient evidence. We disagree.

{¶33} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991),

paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶34} Mr. Jackson was convicted of both aggravated trafficking in drugs and trafficking in heroin under R.C. 2925.03(A), which states in relevant part: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [methamphetamine or heroin], when the offender knows or has reasonable cause to believe that the [methamphetamine or heroin] is intended for sale or resale by the offender or another person." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). As the amount of methamphetamine equaled or exceeded five times the bulk amount, but was less than fifty times the bulk amount, aggravated trafficking in drugs was a felony of the second degree. *See* R.C. 2925.03(C)(1)(d). As the amount of heroin equaled or exceeded five grams, but was less than ten grams, trafficking in heroin was a felony of the third degree. *See* R.C. 2925.03(C)(6)(d).

{¶35} Mr. Jackson was also convicted of both aggravated possession of drugs and possession of heroin under R.C. 2925.11(A), which states in relevant part: "No person shall knowingly obtain, possess, or use [methamphetamine or heroin]." As the amount of methamphetamine equaled or exceeded five times the bulk amount, but was less than fifty times the bulk amount, aggravated possession of drugs was a felony of the second degree. *See* R.C. 2925.11(C)(1)(c). As the amount of heroin equaled or exceeded five grams, but was less than ten grams, possession of heroin was a felony of the third degree. *See* R.C. 2925.11(C)(6)(c).

**{¶36}** Finally, Mr. Jackson was convicted of having weapons while under disability under R.C. 2923.13(A)(2), which states in relevant part: "Unless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm * * * [if t]he person is under indictment for or has been convicted of any felony offense of violence * * *."

**{¶37}** Mr. Jackson argues that the State did not present any evidence that he constructively possessed the firearm or drugs found inside of a bedroom at 1016 Beardsley Street. Furthermore, he claims the State did not present any evidence to support his two trafficking convictions.

**{¶38}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "[A] person may knowingly possess a substance or object through either actual or constructive possession." *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it." *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 11. "The State may prove dominion and control through circumstantial evidence." *State v. Rucker*, 9th Dist. Summit No. 25081, 2010-Ohio-3005, ¶ 30. Ownership need not be established to demonstrate constructive possession. *Hilton* at ¶ 16. "Some facts standing alone, such as access to drugs, are insufficient to establish constructive possession on their own, but when viewed together, these factors may constitute circumstantial evidence that demonstrates constructive possession." *State v. Mack*, 9th Dist.

Summit No. 26859, 2014-Ohio-1387, ¶ 9. Furthermore, "'[p]ossession of a drug includes possessing individually or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others.'" *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8, quoting *State v. Alicea*, 8th Dist. Cuyahoga No. 78940, 2001 Ohio App. LEXIS 4662, *17 (Oct. 18, 2001).

{¶39} At trial, the State introduced into evidence a redacted letter addressed to Mr. Jackson at 1016 Beardsley Street from his attorney, which was dated approximately one week earlier and found on a bedroom dresser amongst large quantities of drugs, $8,322.00 in cash, and various other evidence indicative of drug trafficking such as digital scales and plastic baggies. Large pieces of methamphetamine and heroin were found as well as hundreds of individual packets or doses of the two drugs. Officer Chris Carney testified that no evidence was found which would indicate the *use* of drugs in the residence. Mr. Jackson testified in his own defense at trial and admitted that he had been a drug dealer and had sold heroin prior to this case. A firearm was also found in a woman's purse in the same bedroom where the other contraband was discovered.

{¶40} The testimony presented at trial established that police watched Mr. Jackson leave 1016 Beardsley Street and soon conducted a traffic stop of Mr. Jackson's vehicle several blocks from the residence. This was done for safety purposes for execution of the search warrant at the residence. When he was arrested and searched during the traffic stop, Mr. Jackson had keys for the residence at 1016 Beardsley Street, $710.00 in cash, and three cell phones on his person. Most of the cash recovered in this case consisted of twenty-dollar bills, which Officer Carney testified is a standard denomination indicative of narcotic sales and distribution. Detective Callahan also testified that drug traffickers often carry multiple cell phones, including their

regular cell phone and a "burner" phone for conducting business. He further testified that the Ford Fusion Mr. Jackson was driving was a rental car and that drug traffickers often use rental cars because they are reliable, do not have equipment violations, are less likely to be pulled over, and can be "switched out." Mr. Jackson used 1016 Beardsley Street as his address when he rented the vehicle.

{¶41} Detective Callahan testified that Mr. Jackson confessed that "all the drugs that were recovered in that bedroom were his." The detective further testified that Mr. Jackson said he had a bag of "ice" in the bedroom, which is a term that refers to methamphetamine. Mr. Jackson used his hand to indicate to the detective the approximate size of the bag, which Detective Callahan testified was a golf-ball-sized shape. This was very similar to the size of the large piece of methamphetamine that was actually seized from the bedroom. Detective Callahan testified that Mr. Jackson admitted he gets methamphetamine from a man in Seattle, Washington. Mr. Jackson further told the detective that the individual from Seattle came to Akron approximately two weeks ago and "fronted" him two ounces of "ice." The detective testified that that term means the supplier gave Mr. Jackson the drugs to sell first with an agreement to be paid for the drugs later. Detective Callahan also testified that, although no gun was ever mentioned to Mr. Jackson, he asked the detective if his sister took ownership of the firearm. When the detective said that his sister did not take ownership of it, Mr. Jackson replied, "Damn."

{¶42} Mr. Jackson's statements and admissions to the police, along with the location of the letter, his access to the residence, and the myriad of additional evidence presented at trial, sufficiently established Mr. Jackson's dominion and control and, therefore, constructive possession of the drugs found in the bedroom. Furthermore, although the firearm was found in a woman's purse in the bedroom, Mr. Jackson was never informed by police that any gun was

seized during the search. Nonetheless, he unwittingly asked about the firearm and said, "Damn" when he learned that his sister had not told the police it was hers. These statements, along with the location of the letter and Mr. Jackson's admission of ownership to the contraband found in the same bedroom, were enough to establish that Mr. Jackson knew of the firearm, had access to it, had some authority over it, and had the ability to exercise dominion and control over it. Therefore, the evidence sufficiently established Mr. Jackson's constructive possession of the firearm.

{¶43} After viewing the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, that Mr. Jackson constructively possessed the firearm and drugs and was trafficking methamphetamine and heroin. Any rational trier of fact could have found all the elements of these offenses proven beyond a reasonable doubt. Mr. Jackson admitted that he would occasionally stay at 1016 Beardsley Street, he had keys to the residence, and he even used it as his home address for mailing purposes and for registering his rental vehicle. The letter addressed to Mr. Jackson listed 1016 Beardsley as his address and tied him to the bedroom, as it was found on the bedroom dresser amongst a vast amount of contraband. Large amounts of drugs and cash were discovered in the bedroom, including hundreds of individually-packaged doses of methamphetamine and heroin and many twenty-dollar bills, along with digital scales and plastic baggies. Mr. Jackson was driving a rental car and carrying three cell phones on his person when he left the house, and testimony at trial established that this was indicative of drug trafficking. He admitted ownership of the drugs, accurately identified the size of the large piece of methamphetamine that was seized, and explained who and where he got it from and when he received it. He further inquired about the gun when no one had even mentioned the existence of a gun to him. Mr. Jackson even admitted

at trial that he had been a drug dealer prior to this case and had sold heroin before. We conclude that Mr. Jackson's sufficiency argument lacks merit.

{¶44} Mr. Jackson's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT EVIDENCE (SIC) AND, AS A RESULT, APPELLANT JACKSON'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED

{¶45} In his fourth assignment of error, Mr. Jackson argues that his convictions were against the manifest weight of the evidence. We disagree.

{¶46} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶47} Here, Mr. Jackson briefly directs us to his third assignment of error and states, "[T]here was not sufficient evidence presented to the jury to convict[.]" However, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th

Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Jackson then claims that his convictions are against the manifest weight of the evidence by simply stating, "In this case, the manifest weight of the evidence balances in favor of Appellant Jackson." Although he sets forth the standard of review for a manifest weight challenge, he does not cite to the record or present any argument in support of his claim. *See* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."); *accord* Loc.R. 7(B)(7). We are permitted to disregard this assignment of error for that reason alone. *See* App.R. 12(A)(2) ("The [C]ourt may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."); *accord* Loc.R. 7(F). This Court will not create or develop a manifest weight argument on Mr. Jackson's behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

{¶48} Mr. Jackson's fourth assignment of error is overruled.

### III.

{¶49} Mr. Jackson's first, second, third, and fourth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.